UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| UNITED STATES OF AMERICA, | U.S.C.A. No. 23-1303 |
| --- | --- |
| Plaintiff-Appellee, | U.S.D.C. No. 3:19-CR-00011-SLG |
| v. | **APPELLANT'S UNOPPOSED MOTION TO STAY APPEAL** |
| JESSICA SPAYD, | |
| Defendant-Appellant. | |

### I. Introduction

Appellant Jessica Spayd respectfully moves this Court to stay her appeal so that she may file and litigate a motion for a new trial in the District Court for the District of Alaska. Ms. Spayd's trial was fundamentally unfair due to judicial misconduct by former district judge Joshua Kindred, who resigned in July 2024 after the Judicial Council's public reprimand. *See* Exh. D-1, Order and Certification, *In re Complaint of Judicial Misconduct*, No. 22-90121. Specifically, justice requires a new trial for Ms. Spayd because: 1) Kindred created an unconstitutional appearance of bias by maintaining secret, sexual relationships with two Assistant United States Attorneys during the pendency of the case; and 2) Kindred could not exercise proper

judicial judgment while he was preoccupied by furthering his romantic relationships and suppressing a looming scandal. *See* Fed. R. Crim. P. 33(a) ("Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.").

The unique circumstances of this case justify a stay pending resolution of Ms. Spayd's Rule 33 motion. Both trial and appellate counsel have been zealous and diligent in her defense, and Ms. Spayd looks forward to the efficient resolution of her case. However, the recent revelation of Kindred's misconduct and the government's dilatory disclosures make it imprudent to proceed with the appeal until the lower court considers whether to grant a new trial. While the government does not oppose this motion, Ms. Spayd understands that this Court—already considering the case for oral argument in February—will not lightly grant a stay. Ms. Spayd thus provides below a detailed statement of facts and legal argument to explain why a stay is necessary under the extraordinary circumstances of this case.

//

//

//

//

## II. Statement of Facts[1]

Ms. Spayd was a nurse practitioner operating a pain clinic in Eagle River, Alaska. An October 2019 indictment alleged that she unlawfully prescribed controlled substances "outside the usual course of professional practice and without a legitimate medical purpose." CR[2] 10. The indictment also alleged that the dispensing of these drugs resulted in the death of some of her patients and that she maintained her clinic for the primary purpose of unlawfully prescribing pain medication. *Id.* The case was initially assigned to District Judge Ralph R. Beistline, but the case was re-assigned to former District Judge Joshua Kindred on March 3, 2022. CR 150.

Around the time he began work on Ms. Spayd's case, Kindred developed an "unusually close relationship" with his law clerk. Exh. D-1 at 7. He confided in her about being overwhelmed with his job as a federal judge and often "leaned on [the law clerk] for counsel and support." *Id.* at 12. He texted her in July 2022 while away on a conference that he missed her and would be an "emotion[al] wreck" when she

---

[1] Ms. Spayd's opening brief presents a more complete recounting of the trial evidence. *See* AOB at 4–15. This motion focuses on the facts and procedure material to a motion for a new trial.
[2] "CR" refers to the district court docket, included with Appellant's Excerpts of Record at 16-ER-3131.

3

left the clerkship. *Id.* at 7. Over the 11 months of her clerkship, Kindred and the clerk exchanged 278 pages of text messages, "only a small fraction of which had any relationship to her legitimate job duties." *Id*. The clerkship concluded, and the clerk joined the U.S. Attorney's Office in Anchorage as a trial attorney on September 26, 2022. Exh. D-2, Declaration of Counsel, ¶14.

Prior to Ms. Spayd's trial, Kindred also received nude photographs from a more senior AUSA. Kindred told one of his law clerks about the photos. Exh. D-1 at 7. The senior AUSA did not enter her appearance in Ms. Spayd's case, but the government has disclosed that she may have attended a trial preparation meeting on September 22, 2022. *See* Exh. D-2 at ¶13.

Ms. Spayd's trial began on September 26, 2022, with voir dire and jury selection. CR 246, 403. After a one-week break, the government and the defense gave opening statements on Monday, October 3. CR 256, 268. On the evening of October 3, Kindred asked the former clerk (now an AUSA at the office prosecuting Ms. Spayd) if she wanted to get together for drinks. Exh. D-1 at 8. The two met up, got drunk, and Kindred offered to drive her home. *Id*. They stopped at Kindred's chambers, where they kissed. *Id*. The former clerk and Kindred gave contrary accounts about who initiated the kiss, but have both confirmed it happened. *Id*.

4

Four days later, on Friday, October 7, Kindred and the former clerk met again.[3] *Id.* Kindred flirted with her at a party, but she eventually left. *Id.* She later texted him to state they should speak in person. *Id.* Kindred drove to her house, and they talked in his truck outside of her house. *Id.* Because it was too cold, Kindred drove them to his apartment. *Id.* When they arrived at his apartment, Kindred went into a bedroom and called for her to join him. *Id.* at 9. The former clerk told the Ninth Circuit that Kindred lured her to lie next to him, took her pants off, and performed oral sex on her. *Id.* She said she resisted, but eventually gave into Kindred's advances because there was "nothing [she] could do about this." *Id.* Kindred has admitted the sexual encounter occurred but denies it was non-consensual. *Id.* at 13–14.

While Kindred and the clerk-turned-AUSA engaged in their affair, Ms. Spayd's trial plodded along. Neither the AUSA nor Kindred disclosed their relationship or sexual encounter to Ms. Spayd during the four weeks of trial. The trial concluded on October 28, 2022, with a guilty verdict. CR 314.

According to a July 2024 email to the Federal Public Defender, management at the U.S. Attorney's Office learned about Kindred's improper relationships with

---

[3] Kindred did not conduct trial on Fridays, so nothing occurred that day in Ms. Spayd's trial.

5

the two AUSAs in "late October and early November" 2022. *See* Exh. D-2 at ¶10. Management thus may have known that these relationships existed before the jury rendered its verdict. U.S. Attorney's Office management indisputably knew of the conflicts shortly after the verdict. The government disclosed the improper relationships to Chief District Judge Sharon Gleason in November, and Kindred began recusing himself from cases involving the two AUSAs on November 15. *Id.* The government did not at that time disclose the relationships to defense counsel.

Sometime after trial, but before sentencing, the government obtained text messages exchanged between Kindred and the former clerk while Ms. Spayd's trial was ongoing. *Id.* at ¶17. These messages include comments about Ms. Spayd's trial and indicate the AUSA's presence in the courtroom during the trial. *Id.* at ¶14. The government did not disclose these messages to Ms. Spayd's trial counsel while the case was pending in district court. In fact, the government claims it did not even disclose the messages to its own trial prosecutors until August 2024, nearly two years after Ms. Spayd had been convicted. *Id.*

Meanwhile, the former clerk requested a transfer away from Alaska in November 2022 after her secret relationship with Kindred was revealed. Jacqueline Thomsen & Ben Penn, *Alaska Judge's Clerk Alleges Retaliation by US Attorney Office*, Bloomberg Law, July 31, 2024. She told First Assistant United States Attorney Kate

6

Vogel in "fall 2022" about the nude photographs from the senior AUSA, but was accused of "spreading gossip" by U.S. Attorney Lane Tucker. *Id.* Department of Justice's Office of Professional Responsibility interviewed the former clerk in 2023 about the photographs, indicating Tucker nonetheless reported the allegations. *Id.*

Based on available information and news reporting, it thus appears that before Ms. Spayd was sentenced in June 2023, U.S. Attorney Tucker and First Assistant Vogel knew about the two improper relationships, disclosed the conflicts to the Chief Judge of the District of Alaska, and disclosed the conflicts to DOJ's internal ethics watchdog. But Tucker and Vogel did not disclose the conflicts to Ms. Spayd. They also declined to inform the two prosecutors who had tried Ms. Spayd's case and would ask for a life sentence from Kindred.

According to Bloomberg News, Tucker sent an internal email defending the office's "prompt response" upon learning about the former clerk and Kindred. Ben Penn, [*Alaska Judge's Sex Scandal Brings Scrutiny to US Attorney Tucker*](), Bloomberg Law, Sept. 10, 2024 ("Tucker and her top deputy, Kathryn Vogel, quickly referred the allegations—including the claim about the other prosecutor's nude photos—to the Ninth Circuit and OPR, according to internal administrative records viewed by Bloomberg Law."). In a July email to the Federal Public Defender, the government confirmed it had communicated ex parte with Chief Judge Gleason in November

7

2022 and "requested administrative assignment/reassignment away from Judge Kindred of cases involving three AUSAs and one defense attorney[.]" *See* Exh. D-2 at ¶10. But Tucker and Vogel—and whoever else knew about the conflicts—kept quiet about Ms. Spayd's case, in which a recusal never happened. Instead, Tucker and Vogel allowed the trial prosecutors to go to sentencing without any knowledge of Kindred's conflict of interest or the text messages he exchanged with the AUSA during the trial. For his part, Kindred never revealed any conflict of interest to Ms. Spayd before he sentenced her to 30 years in prison.

Nothing changed in the government's posture after Ms. Spayd appealed her conviction and sentence. While counsel spent months poring over transcripts and drafting an opening brief, the government held onto its secret. In the background of the appeal, months after Ms. Spayd filed her opening brief, Kindred abruptly resigned without explanation on July 5, 2024. District Court of Alaska Receives Resignation 7/5/2024, *available at* https://www.akd.uscourts.gov/news/district-court-alaska-receives-resignation-752024. Three days later, this Court made public its May 23, 2024, Order and Certification publicly reprimanding Kindred for judicial misconduct. Exh. D-1 at 1.

As discussed in the Order, the Ninth Circuit Judicial Council found that Kindred had created a hostile work environment, engaged in an "inappropriately

8

sexualized" relationship with a law clerk, and lied to the committees investigating his misconduct. *Id*. The Order does not draw any express or implicit tie between Kindred's misconduct and Ms. Spayd's trial.[4] The Order merely states that "[t]he former law clerk did not appear on any case before Judge Kindred while she was employed as an Assistant United States Attorney." *Id*.

The government maintained its silence about the text messages to Kindred even after the Order's publication. In fact, the government twice disclosed cases with potential conflicts to the defense bar on July 12, 2024, and August 2, 2024, but did not include Ms. Spayd's case among the 44 cases it listed. *See* Exh. D-2 at ¶¶9, 12. Not until the day after the government submitted its response brief in this appeal did the government at long last disclose to Ms. Spayd that an AUSA romantically involved with Kindred had sat in the courtroom during trial and texted the judge about the case. *Id*. at ¶¶5, 14.

The government finally produced the text messages in September 2024, almost two years after Ms. Spayd was convicted and 15 months after she filed her notice of appeal. *Id*. at ¶¶15, 16. The government has refused Ms. Spayd's request to

---

[4] Chief Judge Murguia denied a request by the Federal Public Defender for the District of Alaska to release the Ninth Circuit Judicial Council's full report, citing confidentiality provisions under 28 U.S.C. § 360(a).

identify who at the U.S. Attorney's Office knew about the messages and when. *Id.* at ¶20.

### III. Argument

This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The Supreme Court has long recognized that courts may grant a stay where "public welfare or convenience will thereby be promoted." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). Here, a stay is warranted because adjudication of a motion for new trial in the district court prior to deciding this appeal promotes judicial efficiency and avoids needless expenditure of resources by the parties and the Court.

First, a criminal defendant may file a Rule 33 motion for new trial based on newly discovered evidence while an appeal is pending. *United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984) ( "[t]he District Court ha[s] jurisdiction to entertain [a Rule 33] motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case"); *United States v. Frame*, 454 F.2d 1136, 1138 (9th Cir. 1972) ("Rule 33 permits a district court to entertain and *deny* a motion for a new trial based upon newly discovered evidence without the necessity of a remand. Only after the district court has heard the motion and decided to *grant* it is it necessary to

10

request a remand from the appellate court."). Here, Ms. Spayd is well within the 3-year deadline to file a motion under Rule 33(b)(1) based on newly discovered evidence, and she may argue excusable neglect for failing to meet the 14-day deadline under Rule 33(b)(2) to raise other grounds for a new trial. In short, no procedural obstacle bars her motion.

Second, Ms. Spayd has a meritorious motion. Ms. Spayd will not argue her motion in full here, but highlights that even the *appearance* of judicial bias may give rise to structural error when the "probability of actual bias rises to an unconstitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886–87 (2009); *see Greenway v. Schriro*, 653 F.3d at 790, 805 (9th Cir. 2011) ("[W]hen a defendant's right to have his case tried by an impartial judge is compromised, there is structural error that requires automatic reversal."). Here, the presiding judge maintained two secret sexual relationships with prosecutors at the U.S. Attorney's Office during Ms. Spayd's trial. One of those prosecutors was texting the judge about the case during the trial. Even without further factual development, Ms. Spayd has strong arguments for a new trial.[5] As the Judicial Conference concluded, "Judge

---

[5] In fact, one court has already granted a new trial based on Kindred's appearance of bias. In *United States v. Hernandez-Zamora*, Dist. Ct. Case No. 3:21-cr-00062-MAH, the senior AUSA who sent nude photos to Kindred sat in his courtroom during a trial and spoke to the trial prosecutors. Defendant's Motion for Appropriate Relief:

11

Kindred was engaging in a sexual relationship with an employee of the office that oversees federal prosecutions in the District of Alaska, which creates an appearance of impropriety and would naturally diminish public confidence in Judge Kindred's impartiality." D-1 at 23.

Third, a stay promotes efficiency. If the district court indicates it would grant a new trial, this appeal would be moot, and this Court could simply remand for the district court to retry the case. If the district court denies the motion, this Court can hear an appeal of that denial at the same time it considers the complex legal arguments already presented in Ms. Spayd's opening brief. Further, this Court could more ably consider whether Kindred's rulings deserve the same deference as run-of-the-mill evidentiary decisions in light of his misconduct and subsequent resignation.

Last, a stay in this case would not encourage future litigants to revisit district court litigation needlessly while their appeals are pending. The circumstances of this

---

Dismissal of Indictment or Order of New Trial, Dist. Ct. Case No. 3:21-cr-00062-MAH, Doc. No. 276. The government claimed the AUSA's involvement was "limited," so Kindred had no duty of recusal. Government's Response in Opposition to Motion for Dismissal of Indictment or New Trial, Dist. Ct. Case No. 3:21-cr-00062-MAH, Doc. No. 307. The district court granted a new trial. Although the order granting the new trial is under seal, Hernandez-Zamora's counsel reported to Bloomberg News that the order concluded "[t]he mere appearance of misconduct and unfairness created by the presence of the conflicted prosecutor was enough to merit reconsideration." Suzanne Monyak, *Ex-Alaska Judge's Misconduct Triggers New Trial in Criminal Case*, Bloomberg News, September 30, 2024.

12

case are unique. Ms. Spayd could not have brought her motion sooner. Kindred's misconduct became public only after Ms. Spayd had filed her opening brief, and the government concealed further bases for the motion until after it had filed its response brief. Certainly, Ms. Spayd would have preferred to litigate these issues before she was sentenced. She has spent almost two years in prison while the government withheld information justifying a new trial. Her motion aims to vindicate her constitutional rights, not cause further delay.

## IV. Conclusion

For the reasons explained above, Ms. Spayd requests that this Court stay her appeal pending the resolution of a motion for a new trial in the district court. Counsel agrees to file a status report 90 days after this Court grants a stay and every 90 days thereafter or upon the district court's ruling on any motion for new trial.

Respectfully submitted,

Dated: October 9, 2024

*/s/ Michael Marks*
MICHAEL MARKS
Assistant Federal Public Defender
Attorney for Defendant-Appellant
Office of the Federal Public Defender
for the District of Alaska
188 W. Northern Lights Blvd., Suite 700
Anchorage, AK 99503
Phone: 907-646-3412
Email: Michael_Marks@fd.org

13